## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| **RONALD SPEARS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 23-CV-65-JFH-GLJ** |
| | ) | |
| **OKMULGEE COUNTY** | ) | |
| **CRIMINAL JUSTICE TRUST** | ) | |
| **AUTHORITY, and OKMULGEE** | ) | |
| **COUNTY BOARD OF** | ) | |
| **COMMISSIONERS,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>REPORT AND RECOMMENDATION</u>

This matter comes before the Court on Motion by Defendants Okmulgee County Criminal Justice Trust Authority ("OCCJA") and Okmulgee County Board of Commissioners to Dismiss Plaintiff's Second Amended Complaint and Brief in Support ("Motion to Dismiss"). *See* Docket No. 30. On April 25, 2023, the Court referred this case to the undersigned Magistrate Judge for all further proceedings in accordance with jurisdiction pursuant to 28 U.S.C. § 636 [Docket No. 14]. For the reasons set forth below, the undersigned Magistrate Judge finds that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support [Docket No. 30] should be DENIED IN PART and GRANTED IN PART.

## BACKGROUND

On July 7, 2022, Plaintiff filed his petition in Okmulgee County District Court, Oklahoma, asserting claims arising under the Americans with Disabilities Act of 1990 ("ADA"), the Oklahoma Anti-Discrimination Act and wrongful discharge. *See* Docket No. 2-2. On July 26, 2023, Plaintiff filed a Second Amended Petition, in which he alleges claims for violation of the ADA, Title VII, 42 U.S.C. § 1983, and the Oklahoma Anti-Discrimination Act. *See* Docket No. 25. On July 27, 2023, Defendants filed the Motion to Dismiss. *See* Docket No. 30.

Plaintiff alleges he was employed with the OCCJA and the Board for thirteen years. *See* Docket No. 25, ¶ 15. In 2016, Plaintiff was diagnosed with cancer. *Id*., ¶ 17. Defendants were aware he was actively participating in cancer treatment after his diagnosis, including receiving three medical treatments per month that required time off from work and/or an alteration of his work schedule. *Id*., ¶¶ 18-19. In particular, Plaintiff alleges that his cancer treatments caused him to experience pain, lethargy and nausea, but he was nonetheless able to perform his job functions with certain accommodations. *Id*., ¶ 21. At some point when Sam McCoy was OCCJA Director, Plaintiff requested and received an unspecified accommodation for his cancer treatments. *Id*., ¶¶ 20, 25 & 43. After Shannon Clark replaced McCoy as OCCJA Director, Clark instituted a blanket policy prohibiting employees from taking time off work to address health care issues or to work from home. *Id*., ¶¶ 23-24. Despite being aware of Plaintiff's cancer treatment, Clark and Defendants refused to engage in a dialogue with Plaintiff regarding his medical treatment or any potential accommodation and did not allow the accommodation Plaintiff required.

*Id.*, ¶ 24. Plaintiff was qualified for his positions at OCCJA and, prior to his termination, was consistently promoted and was never disciplined. *Id.*, ¶ 22. On July 23, 2020, the OCCJA and Board retired to a closed session and, acting together in concert, decided to terminate Plaintiff without giving a reason. *Id.*, ¶¶ 25 & 31. Plaintiff alleges both that he was never given a reason for his termination and that his termination was based on his previous requested accommodation, which conflicted with Defendants' newly instituted policy prohibiting such accommodation. *Id.*, ¶¶ 25 & 32.

## ANALYSIS

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-557, 570 (2007). Detailed factual allegations are not required, but the statement of the claim under Rule 8(a)(2) must be "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555 (2007)). *See generally* Fed. R. Civ. P. 8(a)(2) (complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"). "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in h[is] complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012). Thus, the appropriate inquiry is "whether the complaint sufficiently alleges facts supporting all the

elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (quoting *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement[.]" *Iqbal*, 556 U.S. at 678.

## I.    Americans with Disabilities Act

Plaintiff asserts claims under Title I of the Americans with Disabilities Act. Plaintiff generally alleges that "Defendants discriminated against the Plaintiff when they refused to allow for an accommodation for his known disability and terminated his employment due to his need for accommodation in connection with his cancer treatment." *See* Docket No. 25, ¶ 37. Although the Second Amended Complaint does not clearly delineate his ADA claims, or any of his other claims,[1] Defendants' Motion to Dismiss addresses three distinct

---

[1] It is well established that Rule 8 "sets out a minimum standard for the sufficiency of complaints" in order "to give fair notice of the claim[s] being asserted" and the grounds upon which they rest, "so as to permit the adverse party the opportunity to file a responsive answer [and] prepare an adequate defense." *Brown v. Califano*, 75 F.R.D. 497, 498 (D.D.C. 1977) (citations omitted); *see also Twombly*, 550 U.S. at 555 (explaining that the requirements of Rule 8 are meant "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (alteration in original) (internal quotation marks and citation omitted)). Plaintiff's Second Amended Complaint plainly fails to follow the letter and the spirit of Rule 8(a) by simply listing all his claims under a single heading and makes no attempt to delineate between claims in any way. Although the undersigned Magistrate Judge proceeds on the substance, counsel is cautioned that, "as a structural matter, the [] Complaint is deficient because it purports to assert multiple claims for relief within each 'Claim for Relief.' . . . This format . . . is improper under Rule 8 of the Federal Rules of Civil Procedure." *Park v. TD Ameritrade Tr. Co.*, 2010 WL 4608225, at *2 (D. Colo. Nov. 5, 2010).

claims under the ADA. Therefore, the undersigned Magistrate Judge will address each ADA claim in turn.

A.    *Failure to Accommodate*

Plaintiff alleges Defendants failed to accommodate his disability by changing their leave policy in such a way that did not continue to accommodate his need for leave for his multiple cancer treatments and recovery from such treatments each month, and Defendants did not engage in any meaningful dialogue regarding his need for an accommodation.

The ADA prohibits a covered employer from "discriminat[ing] against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . [or] other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Actionable discrimination under the ADA takes many forms, one of which is when an employer fails to provide a disabled employee a reasonable accommodation. *See id*. § 12112(b)(5)(A); *see also EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1048 (10th Cir. 2011) ("The [ADA] . . . establishes a cause of action for disabled employees whose employers fail to reasonably accommodate them." (Quoting *Selenke v. Med. Imaging of Colo.*, 248 F.3d 1249, 1261 (10th Cir. 2001)) (internal quotation marks omitted)). A plaintiff may establish a *prima facie* failure to accommodate claim by alleging "that '(1) [he] is disabled; (2) [he] is otherwise qualified; and (3) [he] requested a plausibly reasonable accommodation.'" *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1204 (10th Cir. 2018) (alterations in original) (quoting *Punt v. Kelly Servs.*, 862 F.3d 1040, 1050 (10th Cir. 2017)); *see also Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 912 n.4 (10th Cir. 2004).

Defendants argue at length that Plaintiff cannot state a failure to accommodate claim because he does not allege that he requested an accommodation *after* the new OCCJA Director took over and changed the leave policy. *See e.g.*, Docket No. 30, pp. 8-9 (Plaintiff "does not allege he *ever* made any specific and direct request for ADA accommodation after the leave policy changed," "he did *not* request any such accommodation *after* the policy change took effect" and no allegation that "Plaintiff ever made any request for accommodations *after* the policy change" (emphasis original)). Similarly, Defendants argue that Clark, the new OCCJA Director, was not *personally* aware of Plaintiff's disability, need for an accommodation or prior accommodation. *Id*. at p. 10. Left unaddressed, however, is whether an ADA failure to accommodate claim can be based on a policy change that effectively rescinds or withdrawals a previously granted accommodation.

Although it does not appear the Tenth Circuit has addressed the issue specifically, other courts have found that withdrawing a previously granted accommodation may support an ADA failure to accommodate claim. For example, in *Isbell v. John Crane, Inc.*, 30 F.Supp.3d 725, 735-36 (N.D. Ill. 2014), the court granted summary judgment where the employer's sudden change in start-time policy without considering the plaintiff's known disability and prior accommodation constituted an unreasonable failure to continue to accommodate that disability. In *Crane*, the employer made an accommodation for the plaintiff to come into work at 10:00 instead of 8:30 and such accommodation continued for 2 ½ years. *Id*. at 730. After a change in management and even though it was not shown that the new manager was aware of plaintiff's accommodation, a new policy was

6

implemented requiring a uniform start time for all employees, including plaintiff. *Id*. The

*Isbell* court noted that:

> [n]o real reason has been proffered by [the employer] as to why a new
> management broom, who (not incidentally) had no prior knowledge of
> [plaintiff's] special arrangement or of the needs that had prompted it, should
> be entitled to start by subjecting her to a one-size-fits-all timing sweep.
> Indeed, as already indicated in the preceding paragraph, such uniformity of
> treatment is precisely what the underlying purpose of the ADA rejects.
>
> . . . Because [the employer] had already made a reasonable accommodation
> a few years earlier when it permitted [plaintiff] to start her work day at 10
> a.m., the question becomes instead whether it was reasonable for [the
> employer] to withdraw that existing accommodation. Without evidence that
> [plaintiff's] later timetable was placing an undue burden on [the employer],
> the answer to that question is plainly "no." Even if the record contained a
> material suggestion that her later start time was making it difficult for her to
> meet [the employer's] reasonable expectations—and it would be an undue
> stretch to draw such an inference from the record—[the employer's]
> obligation under the ADA was to work with [plaintiff] to adjust the existing
> accommodation in an attempt to correct those problems, not simply to alter
> the accommodation to her detriment.

*Id*. at 734. *See also Kassa v. Synovus Financial Corp.*, 800 Fed.Appx. 804, 810 (11th Cir.

2020) (testimony that former supervisor allowed plaintiff to take frequent breaks but the

new supervisor refused such accommodation, was enough to get the refusal of

accommodation claim to trial); *Bilinsky v. American Airlines, Inc.*, 928 F.3d 565, 573 (7th

Cir. 2019) ("[a]bsent some change in circumstances, an employer may not rescind an

accommodation simply because it is inconvenient or burdensome – the statute requires the

employer to make reasonable sacrifices to keep disabled persons in the work force"); *Seidel*

*v. New Caney Independent Sch. Dist.*, 2015 WL 6549895, *4 (S.D. Tex. Sept. 18, 2015)

(denying motion to dismiss where it is alleged that defendant withdrew an existing

accommodation, which may give rise to ADA liability) (citing *Isbell*, 30 F.Supp.3d at 734);

and *Brown v. Smith*, 21 F.Supp.3d 974, 982 (S.D. Indiana 2014) (employer's obligation under the ADA was to work with employee to adjust the existing accommodation in an attempt to correct problems, not withdraw the accommodation completely to the employee's detriment) (citing *Isbell*, 30 F.Supp.3d at 734).

The undersigned Magistrate Judge agrees with the reasoning in *Isbell* and related authorities concluding that a policy change, even if facially neutral, that has the effect of withdrawing a previously granted accommodation may be the basis for an ADA failure to accommodate claim. Plaintiff alleges, albeit in very general terms, that when McCoy was OCCJA Director, he requested and received an unspecified accommodation for his cancer treatments. *See* Docket No. 25, ¶¶ 20, 25 & 43. Moreover, Plaintiff alleges that after Clark replaced McCoy as OCCJA Director, Clark instituted a blanket policy prohibiting employees from taking time off work to address health care issues or to work from home. *Id*., ¶¶ 23-24. Thus, accepting these allegations as true at this stage of the proceeding, Plaintiff plausibly alleges that Defendants implemented a policy that had the effect of unilaterally withdrawing Plaintiff's pre-existing reasonable accommodation.

Moreover, Plaintiff alleges that after the policy change was implemented, Defendants did not engage in any dialogue with Plaintiff regarding his medical treatment or any potential accommodation and did not allow the accommodation Plaintiff previously received. *Id*., ¶ 24. Defendants argue they were not required to engage with Plaintiff because he never renewed the request for an accommodation after the policy change. While it is true that the interactive process is usually triggered by a request for an accommodation, *C.R. England*, 644 F.3d at 1049 ("before an employer's duty to provide

8

reasonable accommodations—or even to participate in the 'interactive process'—is triggered under the ADA, the employee must make an adequate request, thereby putting the employer on notice"), Plaintiff had already requested and received an accommodation. Thus, Defendants were plainly on notice of the need for such accommodation and were obligated to engage in the interactive process regarding issues with Plaintiff's accommodation caused by its new policy. *See Campbell v. Wal-Mart Stores, Inc.*, 272 F.Supp.2d 1276, 1289 (N.D. Okla. 2003) ("[w]hile the onus is generally on the employee to initiate the interactive process and request a reasonable accommodation, some courts have held that 'if an employee's disability and the need to accommodate it are obvious, an employee is not required to expressly request reasonable accommodation'") quoting *Norris v. Allied–Sysco Food Serv.*, 948 F.Supp. 1418, 1436 (N.D. Cal. 1996), *aff'd* 191 F.3d 1043 (9th Cir. 1999)); *U. S. v. City and County of Denver*, 49 F.Supp.2d 1233, 1240-41 (D. Colo. 1999) ("if an employee requests accommodation or an employer knows of a disability of a qualified individual, the employer has the obligation to participate in the interactive process of determining an accommodation"). Based on Defendants' knowledge of Plaintiff's disability due to his prior request for and receipt of an accommodation, the disability was obvious to Defendants and they were aware of his need for a continuing accommodation such that they may have been obligated to engage in the interactive process related to the policy change and any affects such policy change would have on Plaintiff's existing accommodation.

Defendants also argue that Clark was not *personally* aware of Plaintiff's cancer treatment and his prior accommodation. Setting aside that Clark's knowledge is disputed

by the parties and such a fact dispute is not properly resolved at this stage of the proceeding, *see e.g.*, Docket No. 25, ¶ 26, Defendants do not offer any authority that <u>Defendants'</u> prior knowledge of both Plaintiff's disability and reasonable accommodation should apply only if the new Director was also personally aware of such facts.  In this case, Plaintiff asserts his claims against the OCCJA and the Board, not Clark individually.  As Director, Clark was acting in his official capacity on behalf of the OCCJA when he implemented the new leave policy, so such a policy change is not absolved of its downstream effects on Plaintiff simply because the Director was unaware of those effects.  Indeed, *Isbell* made the point that the new manager's lack of knowledge of the underlying disability or prior accommodation did not change the outcome.  *Isbell*, 30 F.Supp.3d at 734.  Thus, there is no basis for Defendants avoiding the ADA failure to accommodate claim simply because the OCCJA's new Director may have been unaware of an existing accommodation by Defendants and the continuing need for such an accommodation.

Plaintiff alleges that he both requested and received an accommodation for his disability.  By unilaterally changing its leave policy, Defendants effectively withdrew such accommodation.  Additionally, Plaintiff's disability and need for accommodation were known to or obvious to Defendants because of the prior request for and receipt of an accommodation sufficient to give rise to an obligation to engage in the interactive process with Plaintiff after the policy change.  Therefore, Plaintiff plausibly alleges an ADA failure to accommodate claim.

B.    *Disability Discrimination*

Plaintiff alleges Defendants discriminated against him when they "terminated his employment due to his need for accommodation in connection with his cancer treatment." *See* Docket No. 25, ¶ 37.  A *prima facie* case for discriminatory employment termination requires that Plaintiff prove that: (1) he is "disabled" within the meaning of the ADA; (2) he is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) he was discriminated against based on his disability.  *See Butler v. City of Prairie Village*, 172 F.3d 736, 748 (10th Cir. 1999); *Doyal v. Oklahoma Heart, Inc.*, 213 F.3d 492, 495 (10th Cir. 2000).

Defendants challenge only the third element, which requires Plaintiff to allege some affirmative evidence that his disability was a determining factor in the Defendants' decision.  *See Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1322 (10th Cir. 1997 (citing *Ennis v. National Ass'n of Bus. & Educ. Radio, Inc.*, 53 F.3d 55, 59 (4th Cir. 1995)).  Such a burden is "'not onerous,'" but it is also "not empty or perfunctory."  *Id*. (quoting *Ennis*, 53 F.3d at 59).  Thus, "Plaintiff must show that he was terminated because of [his] disability, or that [Defendants] terminated [him] 'under circumstances which give rise to an inference that the termination was based on [his] disability.'"  *Butler*, 172 F.3d at 749 (quoting *Morgan*, 108 F.3d at 1323).

Rather than allege any facts detailing the discriminatory circumstances of his termination, Plaintiff alleges only that Defendants were aware of Plaintiff's cancer treatment and that Defendants terminated him on July 23, 2020, without providing any reason.  *See* Docket No. 25, ¶¶ 26, 31-32.  "[M]ere awareness of disability, without more,

is not sufficient to show that disability was a 'determining factor' in the employer's adverse action." *Angell v. Fairmount Fire Protection Dist.*, 907 F.Supp.2d 1242, 1252 (D. Colo. 2012) (quoting *Ainsworth v. Indep. Sch. Dist. No. 3 of Tulsa Cnty.*, 232 Fed.Appx. 765, 771 (10th Cir. 2007). Thus, Defendants' knowledge of his disability does not meet Plaintiff's burden of alleging he was terminated because of his disability or that he was terminated under circumstances giving rise to an inference of discriminatory animus.

Plaintiff also makes the conclusory assertion that "Defendants terminated Plaintiff because Plaintiff's previously requested accommodations which had been approved under a prior administration were no longer in line with the newly instituted blanket policy of the new Director. . . ." *Id.*, ¶ 25. While a court must accept all well-pled allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the claimant, *Twombly*, 550 U.S. at 555; *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007); *Moffett v. Halliburton Energy Servs., Inc.*, 291 F.3d 1227, 1231 (10th Cir. 2002), it need not accept as true those allegations that are conclusory in nature. *Erikson v. Pawnee County Bd. of County Comm'rs*, 263 F.3d 1151, 1154-55 (10th Cir. 2001). "[C]onclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon*, 935 F.2d 1006, 1109-10 (10th Cir. 1991); *see also Iqbal*, 556 U.S. at 678 ("naked assertion[s] devoid of further factual enhancement" are insufficient to state a claim). Plaintiff offers nothing more that the bald assertion that he was terminated because of his past request for and receipt of an accommodation. Plaintiff offers no factual allegations supporting this

assertion. Such a conclusory allegation is not to be accepted as true and, therefore, Plaintiff does not plausibly state a claim.

Lastly, Plaintiff does not allege a temporal proximity of his request for and receipt of an accommodation with his termination. Although Plaintiff does not allege when he first received an accommodation, he alleges he was diagnosed with cancer in 2016. *See* Docket No. 25, ¶ 17. Moreover, even if the accommodation is considered ongoing for purposes of proximity, Plaintiff does not allege a temporal proximity with Clark becoming the new Director, the implementation of the new leave policy and his termination. *See e.g.*, Docket No. 25, ¶¶ 23-24. Plaintiff alleges only that at some unspecified time Clark replaced McCoy as Director, that at some other unspecified time Clark instituted the new policy and that he was terminated on July 23, 2020. *Id.*, ¶¶ 23-24 & 31. Plaintiff never alleges that he spoke with Clark about his past accommodation or need for an accommodation under Clark's new policy, or that his termination occurred closely after the policy change. While temporal proximity may support an inference that the disability was a determining factor in the termination, the adverse action must be very closely connected to the protected activity. *See Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1231 (10th Cir. 2004) ("unless an adverse action is very closely connected in time to the protected activity, a plaintiff must rely on additional evidence beyond mere temporal proximity to establish causation. . . [A] three-month period, standing alone, is insufficient"); *Ainsworth*, 232 Fed. Appx. At 772, n. 4 (holding that, standing alone, even very close temporal proximity cannot "operate as a proxy for [Plaintiff's] evidentiary requirement" and is insufficient to carry a plaintiff's "burden on the third prong of his prima facie case"). Thus, even if temporal

proximity, standing alone, could support an inference of discrimination, Plaintiff does not allege any facts showing any temporal proximity upon which a plausible inference can be based. Moreover, Plaintiff alleges no other facts demonstrating any causal connection between Plaintiff's previous accommodation and his termination.

Therefore, Plaintiff does not allege facts supporting a plausible ADA disability discrimination claim.

C.    Retaliation

Plaintiff also seems to assert a claim for ADA retaliation based on his termination after seeking and receiving an accommodation. To allege a *prima facie* case of retaliation, Plaintiff must allege he (1) engaged in protected activity; (2) suffered a material adverse action; and (3) a causal connection exists between the protected activity and the adverse action. *See Herrmann v. Salt Lake City Corp.*, 21 F.4th 666, 678 (10th Cir. 2021) (citing *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1186-87 (10th Cir. 2016)).

Defendants first argue Plaintiff did not engage in a protected activity because he never requested an accommodation after Clark took over or after the new policy was implemented. For the same reasons set out above regarding Plaintiff's failure to accommodate claim, the undersigned Magistrate Judge finds that Plaintiff's previous request for and receipt of an accommodation likely constitutes engagement in a protected activity. Plaintiff alleges he was receiving an accommodation at the time of the policy change.

Defendants also argue Plaintiff does not allege any facts in support of the third element, a causal connection between a protected activity and his termination. As with his

14

disability discrimination claim, Plaintiff does not allege any nonconclusory facts demonstrating a causal connection between his request for and receipt of an accommodation and his termination. The closer Plaintiff's termination occurred to the protected activity, the more likely it will support a showing of causation. Compare *Ramirez v. Oklahoma Dept. of Mental Health*, 41 F.3d 584, 596 (10th Cir. 1994) (one and one-half month period between protected activity and adverse action may, by itself, establish causation), with *Richmond v. ONEOK, Inc.*, 120 F.3d 205, 209 (10th Cir. 1997) (three-month period, standing alone, is insufficient to establish causation). A retaliatory motive may be inferred when an adverse action closely follows protected activity. *Chavez v. City of Arvada*, 88 F.3d 861, 866 (10th Cir. 1996). Unless the termination is very closely connected in time to the protected activity, however, Plaintiff must rely on additional evidence beyond temporal proximity to establish causation. *Conner v. Schnuck Markets, Inc.*, 121 F.3d 1390, 1395 (10th Cir. 1997). Again, Plaintiff fails to allege any facts showing a temporal proximity between his accommodation, or even Clark's newly implemented policy, and his termination. Therefore, Plaintiff fails to plausibly plead an ADA retaliation claim.

## II.    Disability Discrimination under 42 U.S.C. § 1983

Plaintiff alleges that Defendants violated his equal protection rights under the Fourteenth Amendment to the United States Constitution by using his disability as the basis for his termination and that Defendants "engaged in a deliberate course of intentional discrimination." *See* Docket Nos. 25, ¶ 48 and 31, p. 4. As set forth below, Plaintiff fails to plausibly allege facts supporting such a claim in his Second Amended Complaint.

The equal protection clause in the Fourteenth Amendment declares that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV.  The equal protection rule generally provides that similarly situated persons should be treated the same but allows that different persons may be treated differently within certain constitutional parameters.  *Plyler v. Doe*, 457 U.S. 202, 216 (1982).  "General rules that apply evenhandedly to all persons within the jurisdiction unquestionably comply with this principle.  Only when a governmental unit adopts a rule that has a special impact on less than all the persons subject to its jurisdiction does the question whether this principle is violated arise."  *New York City Transit Auth. v. Beazer*, 440 U.S. 568, 587-88 (1979).

Equal protection violations are determined based on what classifications are made by the government.  If a government classification or distinction does not burden a "fundamental right" or target a "suspect class," the restriction must be upheld unless it fails to bear a rational relationship to some legitimate end.  *Romer v. Evans*, 517 U.S. 620, 631 (1996).  Plaintiff opaquely alleges that he was terminated because of his disability and need for an accommodation. It is well-established that for purposes of equal protection analysis, however, that the disabled do not constitute a suspect class. *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367–68 (2001) ("[i]f special accommodations for the disabled are to be required, they have to come from positive law and not through the Equal Protection Clause"); *Welsh v. Tulsa*, 977 F.2d 1415, 1420 (10th Cir. 1992) (rejecting an equal protection claim by a disabled job applicant, reasoning that "nothing in the United States Constitution requires the City to accommodate [the disabled applicant's] condition").

16

Because the disabled are not a suspect class for purposes of an equal protection claim under 42 U.S.C. § 1983, under Supreme Court precedent, claims of disability discrimination trigger rational-basis review. *Marks v. Colorado Dept. of Corrections*, 976 F.3d 1087, 1098 (10th Cir. 2020) (citing *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001)). Under rational-basis review, the underlying decision is presumed valid. *Id*. at 1099 (citing C*ity of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985). This presumption requires courts to defer to the decisionmaker's choice whenever it can imagine "any reasonably conceivable state of facts that could provide a rational basis for the classification." *Id*. (citing *Teigen v. Renfrow*, 511 F.3d 1072, 1083 (10th Cir. 2007)). Under this standard, states need not "make special accommodations for the disabled, so long as their actions toward such individuals are rational." *Id*. (citing *Garrett*, 531 U.S. at 367–68).

Plaintiff alleges that Clark's new policy was a "blanket policy" directed towards all employees, not him specifically. *See* Docket No. 25, ¶ 24. However, Plaintiff fails to allege any details or even a description of the policy beyond that it did not allow for medical leave or work from home, and fails to allege facts that Defendants implemented this new policy even in part to eliminate Plaintiff's or any other employee's previously approved accommodation. As Defendants note, in *Welsh*, the Tenth Circuit held that:

> "the requirements for establishing a § 1983 claim are the same as those for establishing the underlying constitutional . . . violations, . . . and purposeful discrimination is an essential element of an equal protection violation." *Lewis v. City of Fort Collins*, 903 F.2d 752, 755 n. 1 (10th Cir. 1990) (citations omitted). "'Discriminatory purpose,' however, implies more than intent as volition or intent as awareness of consequences." *Personnel Adm'r v. Feeney*, 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979).

17

> Rather, it implies that a decisionmaker "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id*. (footnote omitted).

*Welsh*, 977 F.2d at 1419-20. Plaintiff simply does not allege any facts supporting an inference that Defendants enacted the new policy "at least in part" to withdrawal Plaintiff's or any other employee's disability accommodation. Again, Plaintiff's conclusory assertion that Defendants engaged in a deliberate course of intentional discrimination lacks sufficient factual basis to be accepted as true or to support his claim. *Bellmon*, 935 F.2d at 1109-10. Although Plaintiff does not allege any specific provisions of the policy in question, the undersigned Magistrate Judge can imagine reasonably conceivable facts that would form a rational bases for a legitimate purpose for a general policy limiting leave or prohibiting working from home for employees at a county jail authority. Therefore, there is a rational basis for the policy and Plaintiff cannot allege a plausible 42 U.S.C. § 1983 equal protection claim.

Lastly, in his Response Plaintiff appears to assert that in terminating Plaintiff, Defendants "ratified the decision to terminate the Plaintiff due to his disability." First, to the extent Plaintiff is attempting to argue a ratification theory, no facts supporting such a theory are alleged in the Second Amended Complaint. Plaintiff merely alleges that "[o]n the day the Plaintiff was terminated by the [D]efendants, the Defendants retired to a joint closed session (OCCJA and OCBC) and together acting in concert, terminated plaintiff and gave no reason whatsoever for the termination at the time." *See* Docket No. 25, ¶ 25. Thus, Plaintiff alleges in his Second Amended Complaint that Defendants made the decision to terminate him, not that they ratified such a decision made by others. Second, even in his

attempt to interject a ratification theory, Plaintiff fails to assert who or what entity made the decision that was subsequently ratified by Defendants. Third, "a federal court may only consider facts alleged within the complaint" when ruling on a Rule 12(b)(6) motion. *See Peoples v. Long*, 2020 WL 9076288, *10 (D. Colo. Dec. 16, 2020) (quoting *Cty. of Santa Fe, N.M. v. Pub. Serv. Co. of N.M.*, 311 F.3d 1031, 1035 (10th Cir. 2002). Neither a ratification theory nor any factual allegations to support it are asserted in the Second Amendment Complaint, and Plaintiff cannot amend his pleading through his Response to the Motion to Dismiss. *See Jojola v. Chavez*, 55 F.3d 488, 494 (10th Cir. 1995).

### III. Plaintiff's Abandoned Claims

Plaintiff's Second Amended Complaint again vaguely alleges claims for Title VII and the Oklahoma Anti-Discrimination Act. Plaintiff was previously instructed not to include the OADA claim in his Second Amended Complaint because he previously abandoned it. *See* Docket Nos. 19, 22 & 24. Nonetheless, after improperly including it in the Second Amended Complaint, Plaintiff again affirmatively abandons his OADA claim. *See* Docket No. 31, p. 5. Plaintiff also fails to respond to the Motion to Dismiss arguments regarding his Title VII claim. *See* Docket No. 31.

Due to Plaintiff's abandonment of these two claims, both should be dismissed. *See*, *e.g.*, *C1.G ex rel. C.G. v. Siegfried*, 38 F.4th 1270, 1282 (10th Cir. 2022) (affirming district court's conclusion that plaintiff abandoned facial constitutional claim "by not addressing it in his response to [d]efendants' motion to dismiss"); *see also Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1053-54 (7th Cir. 2019) (explaining that a complaint "can be subject to dismissal if a plaintiff does not provide argument in support of the legal adequacy

of the complaint," such as "when a party fails to develop arguments related to a discrete issue or when a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss" (citation omitted)); *Tex. Cap. Bank N.A. v. Dallas Roadster, Ltd. (In re Dallas Roadster, Ltd.)*, 846 F.3d 112, 126 (5th Cir. 2017) (concluding plaintiff abandoned one of two claims argued on appeal because his "oppositions to the motions to dismiss and for summary judgment contained arguments only about the" other claim).

## IV.    Leave to Further Amend

Defendants ask the Court to deny further amendment of the Second Amended Complaint as futile.  Federal Rule of Civil Procedure 15(a)(2) provides, in pertinent part, that "a party may amend its pleading only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Whether to grant leave to amend is within the trial court's discretion.  *Woolsey v. Marion Labs., Inc.*, 934 F.2d 1452, 1462 (10th Cir. 1991).  "Refusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, *failure to cure deficiencies by amendments previously allowed*, or futility of amendment."  *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993) (emphasis added).

After this case was removed from Okmulgee District Court, Oklahoma, and Defendants filed a motion to dismiss, the Court invited Plaintiff, if he so desired, to file an amended complaint.  *See* Docket No. 9.  Plaintiff took up the Court's offer and filed his First Amended Complaint on April 9, 2023, Docket No. 11, to which Defendants again

filed a motion to dismiss, Docket No. 13. Plaintiff was subsequently allowed a second amendment. *Id*. at Nos. 22 & 24. Although Plaintiff has now had multiple opportunities to amend his complaint to add additional facts to address issues raised in the motions to dismiss, the undersigned Magistrate Judge nonetheless recommends that he be allowed to amend his complaint one more time with respect to his ADA discrimination and retaliation claims. Although multiple motions to dismiss were filed, none were evaluated or adjudicated on merits until the current Motion to Dismiss. It is reasonable to believe that additional relevant facts, including information regarding the approximate dates of certain events that would allow the parties and the Court to better analyze whether he can plausibly allege such claims, are or should be within the Plaintiff's possession. Therefore, the undersigned Magistrate Judge recommends that further leave to amend be granted only as to the ADA discrimination and retaliation claims. As to Plaintiff's 42 U.S.C. § 1983 equal protection claim, however, Plaintiff had ample opportunity to allege additional facts to address the issues raised in the multiple motions to dismiss with respect to such claim but failed to cure the deficiencies in the previous amendments allowed, s*ee Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1585 (10th Cir. 1993) (repeated failure to cure deficiencies by amendments previously allowed is grounds for denying leave to amend), and it would be futile to do so. As discussed above, there is a rational basis for the policy such that Plaintiff cannot state a plausible claim. Therefore, the undersigned Magistrate Judge recommends that the equal protection claim dismissed herein, be dismissed with prejudice and without leave to further amend.

21

## CONCLUSION

Based on the above findings, the undersigned Magistrate Judge hereby RECOMMENDS that Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint and Brief in Support [Docket No. 30] be DENIED IN PART with respect to Plaintiff's ADA claim for failure to accommodate and GRANTED IN PART as to all of Plaintiff's remaining claims. It is further recommended that Plaintiff be granted leave to amend the Second Amended Complaint with respect to only the ADA discrimination and retaliation claims and that such amendment be filed within 14 days of the adoption of this Report and Recommendation. **A redline version of the Second Amended Complaint must be attached to the Third Amended Complaint.** Any objections to this Report and Recommendation must be filed within fourteen days. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any objection and response shall each be limited to 10 pages and a reply is permitted only with leave of court upon a showing of good cause.

**DATED** this 30th day of September, 2023.

_____

**GERALD L. JACKSON**
**UNITED STATES MAGISTRATE JUDGE**